503 F.2d 946
 1974-2 Trade Cases 75,358
 James M. BACON et al., Plaintiffs-Appellants,
v.
TEXACO, INC., Defendant-Appellee.
No. 74-2045 Summary Calendar.*
*Rule 18, 5th Cir.; see Isbell Enterprises, Inc.
v.
Citizens Casualty Co. of N.Y. et al. (5th Cir. 1970), 431
F.2d 409, Part I.
 United States Court of Appeals, Fifth Circuit.
 Nov. 13, 1974.
 
 Donald Scott Thomas, Jr., Austin, Tex., Allen Wood, Corpus Christi, Tex., for plaintiffs-appellants.
 William C. Weitzel, Jr., Charles F. Kazlauskas, Jr., New York City, James W. Wilson, Austin, Tex., Ben A. Donnell, Corpus Christi, Tex., for defendant-appellee.
 Before THORNBERRY, AINSWORTH and CLARK, Circuit Judges.
 PER CURIAM:
 
 
 1
 Appellants sought treble damages and injunctive relief against Texaco, Inc. for alleged violations of the price discrimination provisions of Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C.A. 13(a). The sole issue on appeal is whether the underlying transaction giving rise to their claim crossed the interstate threshold of Robinson-Patman so as to avoid the summary judgment granted by the district court below. We hold that it does not and affirm.
 
 
 2
 Appellants are thirty-one gasoline retailers in the Corpus Christi, Texas area who lease their stations and purchase their gasoline from Texaco and do business under the 'Texaco' sign. They claim injury from the sale of gasoline by Texaco to Texas Star Distributing Company (Texas Star), the operator of a chain of Texaco retail service stations, at a price approximately four cents per gallon cheaper than that paid by appellants. Appellants assert that Texas Star was in direct competition with them and that the 'favored customer discount' that it received bore little relation to any distribution or wholesale functions that Texas Star performed for Texaco.
 
 
 3
 The material facts of the sale are stipulated and Texaco readily agreed that Texas Star received a jobber discount. But in defense Texaco challenges appellants' right to bring this price discrimination claim within the 'in commerce' language of Section 2(a) of the Robinson-Patman Act. After extensive discovery on that issue by both parties, the district judge granted Texaco's motion for summary judgment.
 
 
 4
 Appellants mount two principal assaults. First, but quixotically, they directly challenge the long-accepted interpretation of the 'sale in commerce' language of Section 2(a) of the Robinson-Patman Act which restricts price discrimination cases to sales occurring, at least in part, in interstate commerce. E.g., Littlejohn v. Shell Oil Co., 483 F.2d 1140 (5th Cir.), cert. denied, 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973); Lehrman v. Gulf Oil Corp., 464 F.2d 26, 37 (5th Cir.), cert. denied, 409 U.S. 1077, 93 S.Ct. 687, 34 L.Ed.2d 665 (1972); Cliff Food Stores, Inc. v. Kroger, Inc., 417 F.2d 203, 208-210 (5th Cir. 1969; Walker Oil Co. v. Hudson Oil Co., 414 F.2d 588, 589-590 (5th Cir. 1969); Hiram Walker, Inc. v. A & S Tropical, Inc., 407 F.2d 4, 9 (5th Cir. 1969), cert. denied, 396 U.S. 1042, 90 S.Ct. 684, 24 L.Ed.2d 686 (1970). They argue that the statutory language should be read broadly, in accord with the original congressional intent,[1] to encompass the full scope of the Commerce Clause as does the Sherman Anti-trust Act, thereby including within the coverage of the Robinson-Patman Act any sale which has an 'effect on commerce' regardless of whether the sale itself is interstate in nature. Despite their vigorous and cogent advocacy, the weight of existing precedent mandates that the federal act not be extended to afford intrastate relief.
 
 
 5
 Whatever may be its ambiguous history,[2] the phrasing of the Robinson-Patman Act clearly dictates that a particular sale is subject to its sanction only if: (1) the seller is engaged in commerce; (2) in the course of such commerce, the seller has discriminated in price between different purchasers of commodities of like grade and quality; (3) 'either or any of the purchases involved in such discrimination are in commerce'; and (4) there is likely to be a severe, adverse effect on competition.[3] To permit suits to be brought under this provision for price discrimination in intrastate sales of the type at issue in this litigation would be to ignore the explicit words of the statute and make it a panacea for every sort of pricing disparity.
 
 
 6
 Anticipating the probability that this court would continue to follow the considerable precedent requiring an interstate sale for Robinson-Patman jurisdiction, appellants' second and alternative contention is that the network of sales involved in this case meets the 'in commerce' requirement as construed by existing case law. We reject this position also. Appellants first argue that the sales at issue here were conducted in the 'flow of commerce' since the crude oil from which the gasoline was refined was shipped from another state. While it is true that the Supreme Court and this court have held that when a sale occurs in the 'flow of commerce,' the sale is deemed to be 'in commerce' under the Robinson-Patman definition, (e.g., Standard Oil Co. v. FTC, 340 U.S. 231, 71 S.Ct. 240, 95 L.Ed. 239 (1951) (the gasoline itself was shipped across a state line so the 'flow of commerce' was not interrupted); and Foremost Dairies, Inc. v. FTC, 348 F.2d 674 (5th Cir.), cert. denied, 382 U.S. 959, 86 S.Ct. 435, 15 L.Ed.2d 362 (1965) (the milk underwent 'rather negligible processing,' so the 'flow of commerce' was not interrupted)), those decisions are inapplicable here since the sales at issue in this case, unlike the sales in Standard Oil Co. and Foremost Dairies, Inc., involve products which have undergone substantial change through processing after entering the State of sale. The extensive process involved in refining crude oil into gasoline results in the alteration of the nature of the product. No 'flow of commerce' ever took place as to the gasoline which is the subject of this claimed wrong. Therefore the prior travels of the atoms and molecules of crude oil from which it came are not determinative of the inter- versus intra-state nature of the end product refined therefrom. Belliston v. Texaco, Inc., 455 F.2d 175 (10th Cir.), cert. denied, 408 U.S. 928, 92 S.Ct. 2494, 33 L.Ed.2d 341 (1972).[4]
 
 
 7
 Similarly, we reject appellants' additional arguments that the transactions were in commerce because the gasoline was transported in a navigable waterway of the United States, the Gulf Intracoastal Waterway, or because Coastal States (the independent refinery that processed part of the gasoline at issue here) gave Texaco, as part of the consideration for the refining contract, petroleum products located in another state. The fact that some of the gasoline was transported within Texas on navigable waterways is of no jurisdictional significance, and, as Littlejohn, supra, clearly mandates, Texaco's interstate and foreign operations and the existence of interstate dealings with Coastal States do not alter the nature of the sales at issue in this case.
 
 
 8
 Because we also find appellants' remaining arguments unpersuasive, we affirm the summary judgment below.
 
 
 9
 Affirmed.
 
 
 
 [1]
 As support for their argument that Congress intended the Robinson-Patman language to be read broadly, appellants cite H.R.Conf.Rep. No. 2951, 74th Cong., 2d Sess., 6 (1936) in which it was explained that the more expansive House version of the Act that specifically prohibited intrastate price discrimination sales was deleted by the Joint Conference solely because the 'in commerce' language was understood to reach the same result
 
 
 [2]
 See 86 Harv.L.Rev. 765 (1973), asserting that the legislative history of Robinson-Patman reveals an ambivalent congressional intent. Contra, Note, The Commerce Requirement of the Robinson-Patman Act, 22 Hastings L.J. 1245 (1971)
 
 
 [3]
 15 U.S.C.A. 13(a)
 
 
 [4]
 See also Scranton Constr. Co. v. Litton Indus. Leasing Corp., 494 F.2d 778, 781 (5th Cir. 1974) ('the interstate movement of mere ingredients (does not) suffice.')